**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00076-RBJ-STV

TIMOTHY STAPLETON,

     Plaintiff,

v.

JASON LENGERICH,
JEREMIAH HANSEN,
KYLE SHIELDS,
DEAN WILLIAMS,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

     This matter comes before the Court on CDOC Defendants' Motion to Dismiss Plaintiff's Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [#38], which has been referred to this Court for recommendation [#39]. The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

I.     **BACKGROUND**[1]

This action relates to protective measures undertaken at the Buena Vista Correctional Complex ("BVCC") in response to the Coronavirus ("COVID-19") pandemic. [*See generally* #33]  Plaintiff is a convicted and sentenced state prisoner who was detained at BVCC during the COVID-19 pandemic.[2]  [*Id*. at 1; *id*. at ¶ 2] Plaintiff has a "long history with mental health issues that range from PTSD, depression, anxiety, and personality disorder."  [*Id*. at ¶ 12]  Plaintiff further has a history of suicidal ideation and has required medication for his conditions.  [*Id*. at ¶ 30]  The CDOC is aware of his mental health history.  [*Id*. at ¶ 12]  Under Colorado law and various administrative regulations, the CDOC is required to provide health care services to inmates.  [*Id*. at ¶¶ 13-16]

According to the Amended Complaint, from July 27, 2020 to October 3, 2020, and again from October 17, 2020 to November 25, 2020, Defendants implemented two policies at BVCC in response to the COVID-19 pandemic which allegedly violated Plaintiff's rights.  [*Id*. at ¶¶ 1, 3-4]

**A.  Phone Policy**

The first policy denied Plaintiff and others access to phones.  [*Id*. at ¶ 3] Because CDOC prisoners were not able to have in-person visits during the COVID-19 lockdowns, Defendant Williams authorized personal phone calls for all prisoners.  [*Id*. at ¶ 44]  Specifically, the CDOC established a contract with phone provider Global Tel Link

---

[1]  The facts are drawn from the allegations in Plaintiff's First Amended Prisoner Complaint [#33], which must be taken as true when considering the Motion. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

[2]  Plaintiff has since been moved to the Rifle Correctional Center.  [#46]

to provide each prisoner with a free, weekly, five minute phone call.  [*Id*. at ¶ 45]
Despite this arrangement, Defendant Lengerich prohibited Plaintiff from calling home
during the lockdown periods.  [*Id*. at ¶ 46]  No other offenders were prevented from
making their daily calls during lockdown.  [*Id*.]  Defendant Lengerich did not provide a
reason for denying Plaintiff his phone privileges, and Plaintiff did not receive a hearing
regarding the loss of his phone privileges.  [*Id*. at ¶¶ 47-48]

Plaintiff also alleges that he and other inmates were broadly denied access to
phones.  [*Id*. at ¶ 3]  Plaintiff states that he made verbal and kite requests to Defendants
for Clorox wipes and Virex256 to be used to clean the surfaces of the phones.  [*Id*. at ¶¶
5, 18]  He also requested that 15-minute gaps be implemented between each use of the
phones.  [*Id*.]  Plaintiff believed that these changes would provide reasonable
accommodation that would permit inmates to contact their families.  [*Id*.]  Instead,
Defendants informed Plaintiff and other inmates that they could communicate with their
families only by mail.  [*Id*. at ¶ 19]  Plaintiff, however, believed that correspondence by
mail was too dangerous because COVID-19 could live for up to 28 days on a surface
and mail room staff were becoming infected with COVID-19.[3]  [*Id*. at ¶¶ 8, 19]

**B.  Mental Health Policy**

The second policy denied Plaintiff and others access to mental health care.  [*Id*.
at ¶¶ 4, 28, 41]  On November 5, 2020, Plaintiff informed Defendant Shields that he was
depressed and requested to see a mental health provider.  [*Id*. at ¶¶ 36-37]  Defendant
Shields told Plaintiff that providers were not available and that he could not help

---

[3] Plaintiff alleges that staff brought COVID-19 into the prison, including through mail
handling.  [*Id*. at ¶ 21]  But, Plaintiff himself never tested positive for the virus.  [*Id*. at ¶
25]

Plaintiff.  [*Id*. at ¶ 37]  On November 8, 2020, Plaintiff sent a kite to Defendant Hansen stating that Plaintiff was "suffering severe depression and suicidal ideation."  [*Id*. at ¶ 32] A week later, Plaintiff approached Defendant Hansen and requested to be seen by a mental health provider.  [*Id*. at ¶¶ 32-33]  Defendant Hansen told Plaintiff that mental health staff were not available, and he opined that Plaintiff was "just exaggerating" and did not need mental health assistance.  [*Id*. at ¶ 33]

On several other occasions from July 7, 2020 to October 3, 2020, and again from October 17, 2020 to November 25, 2020, Plaintiff disclosed to unnamed correctional officials "that he was suffering from depression, anxiety, and was diagnosed with post-traumatic stress disorder."  [*Id*. at ¶ 42]  On these occasions, Plaintiff also provided these officials with a medical kite requesting mental health care, but each time the officer denied Plaintiff access to medical staff "due to being on COVID-19 lockdown." [*Id*. at ¶¶ 42-43]  Plaintiff also sent five kites to Defendant Lengerich requesting access to mental health professionals, which were all denied.  [*Id*. at ¶ 30]  Finally, Plaintiff suggested to Defendants that Webex communication be used for virtual mental health visits, but Defendants refused to provide virtual services.  [*Id*. at ¶ 11]  Plaintiff alleges that the lockdown policy violated the CDOC's duty to provide health care to inmates.[4] [*Id*. at ¶ 20]

### C. Impact on Plaintiff

Prior to the pandemic, Plaintiff was regularly able to contact his family by telephone, but during the phone restriction his family was unable to obtain information about Plaintiff's wellbeing.  [*Id*. at ¶¶ 6-7]  Plaintiff asserts that he requested access to

---

[4] On December 4, 2020, Plaintiff alleges that another inmate, Mr. Oakes, committed suicide due to the lack of contact with mental health staff.  [#33 at ¶ 10]

mental health staff so they could communicate to Plaintiff's family that his health was fine. [*Id.* at ¶ 9]  Defendants' refusal to provide access to mental health staff caused Plaintiff's "own emotional deterioration." [*Id.*]  Plaintiff's children also "emotionally deteriorated" due to the lack of contact with their father, and his relationship with his children suffered. [*Id.* at ¶¶ 6, 9]  As a result of the stress and anxiety from not being able to contact his family or access mental health services, Plaintiff has suffered from mental anguish, depression, anxiety, and muscle fatigue from the lack of sleep. [*Id.* at ¶¶ 27, 29]

### D. Procedural Posture

Plaintiff filed his Amended Complaint on October 15, 2021, and asserts two claims for relief. [#33]  The first claim, asserted against all Defendants in their individual and official capacities, alleges violation of the Eighth Amendment for denial and delay of medical treatment. [*Id.* at 1-2, 7-9]  The second claim, asserted against Defendant Lengerich in his individual and official capacities, is for violation of Plaintiff's equal protection rights under the Fourteenth Amendment. [*Id.* at 1-2, 9-10]  Plaintiff seeks injunctive relief and damages. [*Id.* at 11-12]  Defendants filed the instant Motion to Dismiss on December 13, 2021, and a Response and Reply have been filed. [##38, 44, 45]

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v.*

*INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).   A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."   *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."   *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir.2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir.2003)).   When reviewing a facial attack on subject matter jurisdiction, the Court "presume[s] all of the allegations contained in the amended complaint to be true."   *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."   *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).   Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Finally, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

III.    **ANALYSIS**

Defendants seek to dismiss Plaintiff's Amended Complaint (the "Complaint") in its entirety.  [#38]  They argue that: (1) Plaintiff's claims for injunctive relief are moot; (2) Plaintiff's claims for compensatory damages are barred by the Prison Litigation Reform Act (the "PLRA"); (3) Plaintiff fails to state any claim for relief under the Eighth or Fourteenth Amendments; and (4) they are entitled to qualified immunity.  [*Id*. at 2]  The Court will address these arguments in turn.

**A. Mootness**

The Complaint seeks injunctive relief in the form of an order:   (1) prohibiting Defendants from subjecting Plaintiff "to the unconstitutional policies and practices described" in the Complaint; (2) imposing policy changes to increase mental health meetings, permit audio-video consultations, and ensure access to mental health treatment during any future lockdowns; and (3) implementing sanitation protocols for facility telephones during future pandemic lockdowns.[5]  [#33 at 11]  Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's claims for injunctive relief because the complained-of lockdowns have been lifted.[6]  [#38 at 3-5]

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *McClendon v.*

---

[5] The Complaint also seeks "special relief" in the form of an order requiring the CDOC to pay for family therapy for Plaintiff and his family "to help repair any emotional deterioration caused by the actions of the Defendants complained of [in the Complaint] during the last Covid[-]19 lockdowns."  [#33 at 11]  This request seeks compensation for past harm and will therefore be addressed in the PLRA analysis below.

[6] Eleventh Amendment immunity bars Plaintiff's suit against Defendants in their official capacities to the extent Plaintiff seeks monetary relief, but does not bar Plaintiff's request for prospective injunctive relief.  *Harris v. Owens*, 264 F.3d 1282, 1289-90 (10th Cir. 2001).

*City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) (citation omitted).  Moreover, "[t]his requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome."  *Id.*   A case becomes moot "when a plaintiff no longer suffers 'actual injury that can be redressed by a favorable judicial decision.'"  *Rhodes v. Judiscak*, 676 F.3d 931, 933 (10th Cir. 2012) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)).   In other words, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *accord Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011).

The Court agrees with Defendants that Plaintiff's claims for injunctive relief are moot.  The Complaint only contains factual allegations related to Plaintiff's access to phone privileges and mental health care during two past lockdown periods.  [*See generally* #33]  Those periods were from July 27, 2020 to October 3, 2020, and again from October 17, 2020 to November 25, 2020.  [*Id.* at ¶¶ 1, 3-4]  The Complaint does not allege that the lockdown conditions are ongoing—nor does it allege facts to suggest that Plaintiff is likely to be subjected to the complained of conditions in the future.  Thus, the Court cannot identify an "actual injury that can be redressed" through injunctive relief.  *Rhodes*, 676 F.3d at 933. *See also Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) (finding plaintiff cannot maintain an action for injunctive relief "unless he . . . can demonstrate a good chance of being likewise injured in the future").

Moreover, even if the lockdown conditions were to occur again at BVCC, Plaintiff is no longer at that facility. [*See* #46]  And, "[w]here the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief." *Jordan*, 654 F.3d at 1027.  Based on the allegations in the Complaint it appears that Plaintiff only complains of conditions at BVCC, not in the CDOC as a whole.  [*See* #33 at ¶ 44 (discussing difference between the CDOC broadly and BVCC specifically during these periods)]  Accordingly, this Court RECOMMENDS Defendants' Motion [#38] be GRANTED to the extent it seeks to dismiss Plaintiff's claims for injunctive relief and that those claims be DISMISSED. *Simpson v. Lewis*, No. 20-CV-01556-WJM-GPG, 2021 WL 467340, at *2 (D. Colo. Jan. 19. 2021) (dismissing claims for injunctive relief on prison COVID conditions because plaintiff was no longer at that facility), *recommendation adopted by* 2021 WL 463632 (D. Colo. Feb. 9, 2021); *see also White v. State*, 82 F.3d 364, 366 (10th Cir. 1996) (holding that plaintiff's claims for injunctive relief were mooted by his release from incarceration).   Moreover, because the Eleventh Amendment bars Plaintiff's official-capacity claims to the extent they seek monetary relief, and because Plaintiff's claims for injunctive relief are moot, the Court further RECOMMENDS that the Motion [#38] be GRANTED to the extent it seeks to dismiss Plaintiff's official-capacity claims. *See supra* n.6.

## B. PLRA

Defendants next assert that Plaintiff cannot recover compensatory damages because he has failed to allege a physical injury.  [#38 at 5]  Under the PLRA, "[n]o

Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."   42 U.S.C. § 1997e(e).   "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional."   *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002).

Here, Plaintiff does not allege any physical injuries resulting from Defendants' alleged actions.   Instead, Plaintiff's Complaint alleges that as a result of the stress and anxiety from not being able to contact his family or access mental health services, he has suffered mental anguish, depression, anxiety, and muscle fatigue from the lack of sleep.   [#33 at ¶ 27, 29]   "But even if those emotional injuries had a physical impact on Plaintiff's health"—such as muscle fatigue—"physical manifestations of mental and emotional injuries are 'insufficient to withstand the "physical injury" requirement' of the PLRA.[7]   *Bueno v. Chekush*, 355 F. Supp. 3d 987, 1000 (D. Colo. 2018) (quoting *Hughes v. Colo. Dep't of Corrs.*, 594 F.Supp.2d 1226, 1238 (D. Colo. 2009)); *see also Hughes,* 594 F.Supp.2d at 1238-39 (noting that physical manifestations of depression and anxiety "cannot support claims for damages pursuant to 42. U.S.C. § 1997e(e)"); *Session v. Clements*, No. 14-cv-02406-PAB-KLM, 2018 WL 637461, at *10 (D. Colo. Jan. 31, 2018) ("While Plaintiff alleges that he suffered "physical injuries," those delineated by him are not distinct from any mental or emotional injuries that he may

---

[7] In his Response, Plaintiff argues that application of Section 1997e(e) to bar mental or emotional damages is unconstitutional because it would immunize Defendants.  [#44 at 6-8 (citing *Siggers-El v. Barlow*, 433 F. Supp. 2d 811 at 815 (E.D. Mich. 2005)]  The Tenth Circuit has explicitly addressed this argument, finding that such a restriction does not violate a plaintiff's constitutional rights.  *Searles*, 251 F.3d at 876.

have suffered."), *recommendation adopted*, 2018 WL 1531685 (D. Colo. Mar. 29, 2018); *Folts v. Grady Cnty. Board of Cnty. Comm'r*, No. CIV-15-996-M, 2016 WL 7116184, at *8 (W.D. Okla. Nov. 2, 2016) (dismissing claim for compensatory damages under PLRA where Plaintiff did not allege that lack of mental health treatment led to physical injury), *recommendation adopted*, 2016 WL 7116192 (W.D. Okla. Dec. 06, 2016).

The case cited by Plaintiff is readily distinguishable.  [#44 at 5-6 (citing *Hawkinson v. Montoya*, 479 F.Supp.2d 1164 (D. Colo. 2007))]  In *Montoya*, the plaintiff sought to recover damages resulting from default judgments being entered against him in state court after the defendants denied the plaintiff the access to the courts needed to defend against those state court actions.  *Id.* at 1169.  The district court concluded that such a claim was not "an action . . . for mental or emotional injury" as the damages were unrelated to any mental injury and, as a result, the claim was not precluded by the PLRA.  *Id.*  By contrast here, all of Plaintiff's damages are related to his mental or emotional injuries.  As a result, because he has not also alleged physical injury, his request for compensatory damages is barred by the PLRA.

Accordingly, Plaintiff cannot recover compensatory damages under § 1997e(e), and the Court RECOMMENDS Defendants' Motion be GRANTED to the extent it seeks to dismiss Plaintiff's request for compensatory damages. The PLRA does not, however, bar Plaintiff's recovery of nominal or punitive damages, even in the absence of a showing of physical injury.  *See Searles*, 251 F.3d at 879, 881**.**

### C. Fourteenth Amendment

Plaintiff asserts two claims against Defendant Lengerich under the Fourteenth Amendment.  [#33 at ¶¶ 44-48]  The first argues that Plaintiff's equal protection rights

were violated when Defendant Lengerich restricted his telephone privileges. [*Id*.] The second argues that Plaintiff's due process rights were violated because he did not receive a hearing before his telephone privileges were removed. [*Id*.] Defendants seek to dismiss both claims.[8]

### 1. Equal Protection

The Equal Protection Clause prohibits government discrimination which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Here, the Complaint does not allege that Plaintiff was deprived of a fundamental right, nor does it allege that Plaintiff is a member of a protected class. [*See* #33] Therefore, to state an equal protection claim, Plaintiff "must allege that he was 'similarly situated' to other inmates who are treated differently, and that the difference in treatment was not 'reasonably related to legitimate penological interests.'" *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1174 (D. Colo. 2010) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006)). The Complaint must also plead facts demonstrating that any different treatment "was the result of intentional or purposeful discrimination." *Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir.

---

[8] Plaintiff's Response did not address Defendants' arguments regarding his Fourteenth Amendment claims. [*See generally* #44] Failure to respond to an argument in a motion to dismiss can result in waiver. *See Cole v. New Mexico*, 58 F. App'x 825, 829 (10th Cir. 2003) (holding that, "by failing to raise the issue in his initial response to the [ ] motion to dismiss, [the plaintiff] has waived the argument"). Nonetheless, the Tenth Circuit has instructed that "even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003).

1996) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent.").

The Complaint fails to plausibly allege any equal protection claim. Plaintiff alleges that all CDOC prisoners were permitted telephone privileges during the identified lockdown periods—except for him.[9]  [#33 at ¶ 44]  But the Complaint does not allege that Plaintiff was "similarly situated" to inmates provided telephone privileges, nor does it allege that restriction of the privileges was unrelated to a legitimate penological interest.  *Matthews*, 744 F. Supp. 2d at 1174.  Indeed, based on the allegations in the Complaint itself, it appears that the restriction of phone privileges was done as a result of the COVID-19 pandemic.  [#33 at ¶ 3]  Accordingly, the Court RECOMMENDS that Plaintiff's equal protection claim be DISMISSED.

### 2. Due Process

"[A]lthough an inmate's 'rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime'" and thus retains certain liberty interests entitled to due process protections.  *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)).  "The Supreme Court has recognized a prisoner may be deprived of a liberty interest based on a severe change in the conditions of confinement."  *Id.*  Such interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

---

[9] The Complaint is internally inconsistent on this point.  While the Complaint does allege that "[a]ll offenders in the CDOC with the exception of Plaintiff were afforded the ability to call home" [#33 at ¶ 46], it elsewhere alleges that Defendants' phone policy "refused Plaintiff and others" access to phones [*Id.* at ¶ 3].

its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In addition, "a liberty interest may be implicated when State laws and prison regulations grant inmates liberty interests to which due process protections apply." *Chambers*, 205 F.3d at 1242.  "In the first situation, the liberty interest exists apart from the state; in the second, the liberty interest is created by the state."  *Id.* (quoting *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir.1999)).

Here, Plaintiff alleges that Defendant Lengerich violated his due process rights by failing to give him a hearing prior to removing his phone privileges and mental health treatment.  [#33 at ¶ 48]  But courts regularly reject claims that "lockdown" conditions and limited access to amenities violate the Due Process Clause.  *See e.g., Simmermaker v. Trump*, No. 20-cv-01671-KMT, 2021 WL 915985, at *4 (D. Colo. Mar. 10, 2021) (allegations of prohibition on iPads, video visits, televisions, and instruments do not implicate due process); *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1172 (D. Colo. 2010) (general allegations of restricted liberty, amenities, recreation, visitation, and privileges do not implicate due process violation); *Lekas v. Briley*, 405 F.3d 602, 610-13 (7th Cir. 2005) (conditions including inability to participate in prison programs, loss of telephone usage, inability to receive family visits, inability to attend church or meet with clergy, and drastic reduction in the number and nature of personal items did not impose an atypical and significant hardship); *Higgason v. Farley*, 83 F.3d 807, 809-10 (7th Cir. 1995) (an inmate's confinement in disciplinary segregation with frequent lockdowns, restricted access to the law library, denial of educational opportunities, and loss of social and rehabilitative activities did not impose an atypical or significant hardship).

Consistent with these opinions, the Court RECOMMENDS Plaintiff's due process claim be DISMISSED.

### D. Eighth Amendment

Plaintiff brings Eighth Amendment claims against all Defendants.  [#33 at ¶¶ 28-43]  The Eighth Amendment "protect[s] against unjustifiable conditions of confinement, such as the unnecessary and wanton infliction of pain . . . or deliberate indifference to an excessive risk to a prisoner's health."  *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019) (quotations omitted).  Prison officials violate the Eighth Amendment "only if the deprivation to which the prisoner has been subjected is 'objectively sufficiently serious' and only if the prison official has a 'sufficiently culpable state of mind.'"  *Grissom v. Roberts*, 902 F.3d 1162, 1174 (10th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"'In prison-conditions cases [the culpable] state of mind is one of deliberate indifference to inmate health or safety.'"  *Grissom*, 902 F.3d at 1174 (quoting *Farmer*, 511 U.S. at 834).  Mere negligence, however, is not sufficient.  *Farmer*, 511 U.S. at 835.  Rather, "[t]he subjective component is akin to 'recklessness in the criminal law,' where, to act recklessly, a 'person must "consciously disregard" a substantial risk of serious harm.'"  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837, 839).  "Given the difficulty in proving an official's state of mind, the subjective component may be proven through circumstantial evidence, and courts 'may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.'"  *Peoples v. Long*, 20-cv-02116-RBJ-NYW, 2020 WL 9076288, at *10 (D. Colo. Dec. 16, 2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002), *recommendation adopted*

16

2021 WL 1085424 (Mar. 22, 2021).  Nevertheless, a "prison official[] who actually knew of a substantial risk to inmate health or safety may be found free from liability if they respond[ ] reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Defendants argue the Eighth Amendment claims against Defendants Lengerich and Williams should be dismissed for failure to allege personal participation in a constitutional violation.[10]   [#38 at 6-7]   They further argue that all Defendants are entitled to qualified immunity on the individual capacity claims.  [*Id*. at 12-14]  The Court will address each argument in turn.

### 1.  Personal Participation

In order to maintain an individual capacity claim under Section 1983, a Plaintiff must establish either personal or supervisory liability of the Defendants.  *Brown v. Montoya*, 662 F. 3d 1152, 1163 (10th Cir. 2011).  Personal liability must be based on personal involvement in a constitutional violation.  *Id*.  And "it is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity . . . that the complaint make clear exactly who is alleged to have done what to whom[,] as distinguished from collective allegations."  *Id*. at 1165 (quotations omitted).

A section 1983 claim based on supervisory liability requires: "(1) personal involvement[,] (2) causation, and (3) [culpable] state of mind."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).  To establish causation, a plaintiff must show that a supervisor defendant "set in motion a series of events that [he] knew

---

[10] Defendants do not appear to dispute that Plaintiff sufficiently alleges a serious medical condition.  [*See generally* #38]

or reasonably should have known would cause others to deprive [the plaintiff] of [his] constitutional rights." *Jensen v. Clyde*, 989 F.3d 848, 858 (10th Cir. 2021) (quotation omitted).  As to the third element, a plaintiff can establish the required state of mind by showing that the supervisor acted with deliberate indifference.  *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018).

The Court agrees that Plaintiff has failed to plead personal participation or supervisory liability as to Defendant Williams.  Plaintiff's entire allegation of fact regarding Defendant Williams is as follows:

> Defendant Williams implemented a policy that denied Plaintiff the right to medical care during the COVID-19 pandemic, and gave wide authority to Defendant Lengerich to implement policies that allowed for the Plaintiff to have his Eighth Amendment rights to receive medical care abrogated by decree.

[#33 at ¶ 41]  These factual allegations do not establish that Defendant Williams was either aware directly that the policy harmed Plaintiff, or that he was aware that the COVID-19 lockdown policy "set in motion a series of events that [he] knew or reasonably should have known would cause others to deprive [Plaintiff] of [his] constitutional rights." *Jensen*, 989 F.3d at 858 (quotation omitted).  Accordingly, this Court RECOMMENDS that Defendants' Motion be GRANTED as to Plaintiff's Eighth Amendment claim against Defendant Williams and that claim be DISMISSED.

The Court, however, finds the Complaint plausibly alleges supervisory liability against Defendant Lengerich.  Allegations that a supervisory prison official was aware of a constitutional violation and failed to take action are sufficient to survive a motion to dismiss.  *See Kneen v. Zavaras*, 885 F.Supp.2d 1055, 1061 (D. Colo. 2012) (finding that prisoner's claims for denial of HCV treatment survived motion to dismiss because prison health administrator reviewed prisoner complaints and was therefore aware of

lack of medical care, yet took no corrective action); *see also Green v. Branson*, 108 F.3d 1296, 1302-03 (10th Cir. 1997) (finding summary judgment in favor of warden inappropriate where warden was aware of the severity of prisoner's condition and lack of medical treatment, but failed to take action).

Here, the Complaint alleges Defendant Lengerich, as the Warden of BVCC, was responsible for implementing the policy that prevented Plaintiff from obtaining access to mental health professionals.  [#33 at ¶¶ 28-29]  It further alleges that Plaintiff sent five kites directly to Defendant Lengerich, informing him that he needed mental health care and requesting that care.  [*Id*. at ¶ 30]  If true, these allegations plausibly allege that Defendant Lengerich was aware of an alleged constitutional violation and allowed it to continue, thus providing the affirmative link necessary to establish supervisory liability. *Kneen*, 885 F. Supp. at 1061.   Accordingly, the Court RECOMMENDS Defendants' motion be DENIED as to this argument.

## 2.  Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   If a defendant asserts qualified immunity, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'"   *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).   "If the plaintiff fails to satisfy either part of the two-part inquiry, the court

must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001). "If the court concludes no constitutional right has been violated, no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted). Because as previously explained the Complaint fails to plead a constitutional violation as to the Eighth Amendment claim against Defendant Williams, Defendant Williams is entitled to qualified immunity on that claim. *See Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) ("It is true that if the plaintiff failed to state a claim under Rule 12(b)(6), the government would also be entitled to qualified immunity.").[11]

With respect to the remaining Defendants, Plaintiff fails to satisfy the second prong of the qualified immunity analysis because he fails to show that the law was clearly established. *Dodds*, 614 F.3d at 1191 (stating plaintiffs have burden to prove both parts of qualified immunity test). "Ordinarily [the clearly established] standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)). Here, Plaintiff has pointed the Court to a number of cases for consideration. [*See* #44 at 11-14] However, those cases either do not refer to Supreme Court or Tenth Circuit precedent,[12] or they do not

---

[11] As explained previously, Plaintiff also failed to state a claim for relief against Defendant Lengerich under the Fourteenth Amendment, and Defendant Lengerich is thus entitled to qualified immunity on that claim as well. *Montoya*, 898 F.3d at 1064.

[12] *See In re Allen*, 106 F.3d 582, 592-97 (4th Cir. 1997) (discussing qualified immunity in cases where officials act wholly "beyond the scope of their authority" in case regarding action of state attorney general); *Al-Jundi v. Mancusi*, 926 F.2d 235, 237-40 (2d Cir. 1991) (discussing warden's duty to plan for medical care for prisoners following prison

address violations similarly analogous to those in the Complaint.[13]   [*Id*.]   Plaintiff therefore has not identified any caselaw that clearly establishes that the instant policies created a constitutional violation.   *Anderson v. Crieghton*, 483 U.S. 635, 640 (1982) ("[I]n the light of pre-existing law the unlawfulness must be apparent.").

Despite this failure, the Court is mindful of Plaintiff's pro se status and has therefore conducted an additional inquiry to determine whether the relevant law was clearly established.   *See Ali v. Duboise*, 763 F. App'x 645, 651-52 (10th Cir. 2019) (reversing trial court's dismissal of a pro se plaintiff's claim for failure to identify a case demonstrating his right was clearly established).   This Court has identified no clearly established right to non-emergent access to mental health providers during a prison lockdown caused by a pandemic.   Accordingly, this Court RECOMMENDS that the Complaint be DISMISSED in its entirety and WITH PREJUDICE as to Claims against Defendants Williams, Lengerich, Shields, and Hansen in their individual capacities.

---

riot and use of force by guards to re-take prison); *Hoptowit v. Ray*, 682 F.2d 1237, 1252-53, 1259 (9th Cir. 1982) (discussing overall conditions of prison medical care infrastructure, finding that prison did not provide sufficient medical resources, and stating in dicta that "[i]t is doubtful, for example, that any circumstance would permit a denial of access to emergency medical care").

[13]  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (discussing prison officials' several hour delay in providing medical care to plaintiff who was suffering a heart attack); *Walters v. Western State Hosp.*, 864 F.2d 695, 699 (10th Cir. 1988) (discussing, in context of involuntary mental health commitment, the right to visitation and to refuse medication); *Ranier v. Oketunmbi*, 12-cv-3075-MSK-MEH, 2014 WL 1224663, at *2-3 (D. Colo. Mar. 25, 2014) (discussing deliberate indifference in three hour delay by prison official to obtain medical care for plaintiff while he was experiencing severe pain and vomiting blood and bile due to kidney stones).

## IV.    CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) be **GRANTED**.[14]

DATED:  July 6, 2022                           BY THE COURT:

                                               s/Scott T. Varholak_____
                                               United States Magistrate Judge

---

[14] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).